# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MITCHELL WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-13-763-HE |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Mitchell Woods (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner's (Commissioner) final decision denying his applications for disability insurance benefits and supplemental security income payments under the Social Security Act. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Upon careful review of the pleadings, the administrative record (AR) and the parties' briefs, the undersigned recommends the Commissioner's decision be affirmed.

**I.  Administrative proceedings and the Commissioner's final decision.**

At age twenty-four, Plaintiff protectively filed his applications with the Social Security Administration (SSA) alleging that he suffers from ADD,

depression, social anxiety, and obesity, making it difficult for him to get along with people and preventing him from working since May 30, 2009. AR 122-28, 129-32, 146, 151.[1] The SSA denied Plaintiff's applications at the State agency level. *Id.* at 58-63, 64-67, 70-72, 73-75. Plaintiff challenged that determination by requesting a hearing before an administrative law judge (ALJ). *Id.* at 78-79. There, represented by counsel, he testified in support of his claim of disability; no vocational evidence was offered. *Id.* at 32-50.

By written hearing decision, *id.* at 17-26, the ALJ found Plaintiff suffers from affective mood disorder, anxiety-related disorders (social phobias), personality disorders, and obesity but determined that none of these impairments, alone or in combination, were presumptively disabling. *Id.* at 19, 20-23. He reviewed the medical evidence, evaluated the opinion evidence, and assessed the credibility of Plaintiff's subjective complaints before finding Plaintiff has the residual functional capacity (RFC)[2] to perform work, though with restrictions. *Id.* at 19-24. The ALJ specifically precluded Plaintiff from

---

[1] Plaintiff also indicated the reason he stopped working on May 30, 2009 was that he had to move with his roommate. AR 151.

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

2

performing any work exceeding the light exertional level;[3] any work where he would be required to climb, balance, stoop, kneel, crouch, and crawl on more than an occasional basis; any work where he would ever be called on to use ladders, ropes, or scaffolds; any work where he would be expected to perform more than simple tasks with routine supervision; any work where he would need to relate to his supervisors and peers on more than a superficial work basis; and any work where he would be required to relate to the general public. *Id.* at 23.

The ALJ compared this assessment to Plaintiff's past relevant work demands and found such work required public contact, exceeding the mental RFC, and was performed at greater than the light exertional level, surpassing Plaintiff's physical RFC. *Id.* at 24. Then – upon application of the Medical-Vocational Guidelines or "grids" – the ALJ concluded Plaintiff retained the capacity to perform work available in the national economy and was not

---

[3] By agency regulation,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.

20 C.F.R. §§ 404.1567(b), 416.967(b).

disabled within the meaning of the Social Security Act. *Id.* at 24-26.

The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision, *id.* at 1-5, and Plaintiff, represented by Miles Mitzner, now seeks review of the Commissioner's final decision in this Court. Doc. 1.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff shows he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**III. Analysis.**

   **A. Plaintiff's claims of error.**

Plaintiff brings five claims of error: (1) "[l]ack of substantial evidence"; (2) "[t]he ALJ impermissibly applied the grids"; (3) "[t]he ALJ failed to analyze the GAF scores"; (4) "[i]nability to sustain employment"; and (5) "[t]he obesity error." Doc. 15, at 2, 3, 7, 10, 12.

   **B. Standard of review.**

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

   **C. Evaluation of Plaintiff's claims.**

      **1. Lack of substantial evidence.**

Plaintiff's first claim of error comprises nothing more than verbiage and case citations supporting his version of the canons of substantial evidence. Doc.

15, at 2-3. Only in his last sentence does Plaintiff argue: "There is no substantial evidence supporting the ALJ's use of the GRIDS in this case." *Id.* at 3. That is the whole of Plaintiff's argument. *Id.*

To the extent Plaintiff intended this as a claim of error, the Tenth Circuit persistently admonishes that "perfunctory complaints fail to frame and develop an issue sufficient to invoke [judicial] review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994). This Court cannot address contentions for which a claimant fails to develop the factual and legal bases for his arguments. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to speculate on claimant's behalf when argument on an issue is "insufficiently developed"). On judicial review, "it is not our role to shore up [Plaintiff's] argument for him." *Chrismon v. Colvin*, 531 F. App'x 893, 896 (10th Cir. 2013) (citation omitted).

## 2. Application of the grids.

The Commissioner promulgated the Medical-Vocational Guidelines – the so-called "grids" – to assist with the burden at step five of the sequential process. *See* 20 C.F.R. pt. 404, subpt. P, App. 2. "The grids are matrices of the 'four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" *Daniels v. Apfel,* 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting

*Heckler v. Campbell,* 461 U.S. 458, 461-62 (1983)). "The grids should not be applied conclusively in a particular case unless the claimant [can] perform the full range of work required of that RFC category on a daily basis and unless the claimant possesses the physical capacities to perform most of the jobs in that range." *Thompson v. Sullivan,* 987 F.2d 1482, 1488 (10th Cir. 1993) (quotation and alteration omitted). And, "resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments." *Id.* (quotation omitted).[4]

Plaintiff points to this law and to the ALJ's RFC finding that nonexertional impairments limited his ability to perform light work, Doc. 15, at 3-7, maintaining "[t]he limitations by the ALJ's RFC make it clear that [Plaintiff] could not perform the full range of work and therefore the GRIDS must have been improperly applied and remand is therefore the proper response." *Id.* at 6-7. Although application of the grids can be problematic where nonexertional impairments are involved, "it is equally clear in [the Tenth C]ircuit that '[t]he mere presence of a nonexertional impairment does not

---

[4] Plaintiff claims the ALJ made "a mere mention of pain [and] there was no *Luna* [*v. Bowen*, 834 F.2d 1161 (10th Cir. 1987)] analysis at all." Doc. 15, at 5. But, Plaintiff – who does not directly challenge the ALJ's RFC assessment – ignores the fact that the ALJ, "[r]esolving all doubt in favor of [Plaintiff]," concluded that "some additional postural limitations are appropriate in light of [Plaintiff's] allegations of *pain* and limitations" and then included postural limitations in Plaintiff's RFC. AR 24 (emphasis added).

7

preclude reliance on the grids.'" *Mitchell v. Astrue*, 498 F. App'x 757, 759 (10th Cir. 2012) (quoting *Thompson*, 987 F.2d at 1488). "The nonexertional impairment 'must interfere with the ability to work.'" *Id.*

"[U]se of the Grids is foreclosed only where the 'nonexertional impairments are significant enough to limit the range of jobs available in a given work category.'" *Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994)). Here, the ALJ found that Plaintiff's mental and physical nonexertional limitations "have little or no effect on the occupational base of unskilled light work." AR 25. He relied on the vocational conclusions established in Social Security regulations and rulings as support for this finding. *Id.* Plaintiff does not challenge that reliance in any manner. Doc. 15, at 6. Instead, he ignores the ALJ's detailed rationale for the finding and attacks – with no support – the finding as "untenable" and "patently false." *Id.*

Plaintiff has failed to establish any error in connection with the ALJ's application of the grids in this case.

### 3. GAF scores.

Until recently, clinicians used the Global Assessment of Functioning (GAF) system to rate an individual's overall level of functioning. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders*,

8

DSM-IV-TR 32 (4th ed., rev. 2000). A GAF score between 41 and 50 indicated "[s]erious symptoms . . . [or] any serious impairment in social, occupational, or school functioning," such as an inability to hold a job. *Id.* at 34.[5] Plaintiff faults the ALJ for failing to discuss and weigh what he claims are multiple low GAF scores "from varying mental health experts" – all at NorthCare Community Mental Health Center (NorthCare) – ranging from one score of 35 to one of 68, with the great majority assessed at 50. Doc. 15, at 7-8.[6] He points to the "many powerful psychotropic medications"[7] prescribed for him and maintains "the ALJ completely missed the boat" by failing to consider his mental disorders in light of the low GAF scores "coupled with powerful prescription medication." *Id.* at 8-9.

Any error by the ALJ in failing to discuss Plaintiff's various GAF scores was harmless. The ALJ's decision reflects his careful review of the evidence from NorthCare as of the time of his February 10, 2012, decision:

---

[5] "[T]he new *Diagnostic & Statistical Manual of Mental Disorders*, 16 (5th ed., 2013) has discontinued [GAF score] use because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Krchmar v. Colvin*, 548 F. App'x 531, 534 n.2 (10th Cir. 2013).

[6] A number of Plaintiff's purported supporting citations to the record – AR 328, 333, 335, 339, 341, 344, 346, 352, 356, 359, 361, 380 – appear to reflect nothing more than appointment and prescription information.

[7] The ALJ specifically considered the medications prescribed for Plaintiff. AR 19-20.

9

> Treatment notes from NorthCare Mental Health Center show the claimant does have ongoing anxiety and depression, but is generally noted to be doing quite well. The claimant initially reported black outs and audio and visual hallucinations (Exhibit 9F), but none of the progress notes report any evidence or reports of hallucinations or delusions. Mental status exam in the psychiatric progress notes generally noted medication compliance with no reported/observed side effects of medication. The claimant was generally noted to be cooperative, with appropriate appearance and affect, no delusions, no hallucinations, normal sleep, thought intact and oriented. (Exhibits 1F, 9F, 12F, 13F, 14F).

AR 23-24.[8]

The ALJ referenced the same treatment notes in which the clinician included a GAF rating.[9] *See id.* at 219, 238, 243, 334, 336, 338, 340, 342, 345, 347, 349, 366, 368, 370, 379, 382, 385.[10] The ALJ found the treatment notes, particularly the more recent ones, consistent with the opinions of the State agency psychologist and the consultative psychological examiner. *Id.* at 24. He gave those opinions great weight, stating they were the basis for his decision to

---

[8] Plaintiff voices no objection to the ALJ's summary.

[9] Some of the treatment notes' assessment scores are either illegible or stamped-over and are not reported here.

[10] As Plaintiff demonstrates, the great majority of the GAF ratings are 50. Doc. 15, at 7-8. The correlation between the scores of 50 and the clinician's stated assessment of Plaintiff is not readily apparent, however. For example, in 2011, on May 6, June 3, July 1, August 26, when Plaintiff was reported to be doing quite well with no indication of anything but normal findings, GAF scores of 50 were assessed. AR 366, 368, 370, 379. Nonetheless, GAF scores of 50 were also assessed on October 21 and December 16 despite some negative findings. *Id.* at 382, 385.

restrict Plaintiff to work where he would never have to do more than simple work with routine supervision and where he would experience no contact with the public and have only superficial work-related contact with supervisors and co-workers. *Id.* at 24, 23.

Plaintiff, who does not directly challenge the ALJ's RFC, does not point to any limitation reflected in the treatment notes that the ALJ failed to consider and account for in the RFC assessment. So, he "does not identify anything specific that would indicate [he] had [greater] limiting effects aside from the [various] GAF score[s]." *Harper v. Colvin*, 528 F. App'x 887, 891 (10th Cir. 2013) (concluding that the claimant was not prejudiced by the ALJ's failure to discuss a GAF score of 49). "Indeed, the GAF score[s are] not linked to any particular symptoms at all." *Id.* At bottom, the ALJ's consideration of the GAF scores assessed by the NorthCare clinicians "would not have helped [Plaintiff]." *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1162-63 (10th Cir. 2012) (applying a harmless error analysis to an ALJ's consideration of GAF scores).

### 4. Inability to sustain employment.

Here, once again, though he does not directly challenge – factually or legally – any aspect of the ALJ's RFC assessment, Plaintiff maintains "[t]here is no substantial evidence supporting" the ALJ's statement that he gave some weight to a third-party function report provided by Plaintiff's mother. Doc. 15,

11

at 12; AR 24, 244-51. Similarly, despite highlighting that his mother "is a Registered Nurse (RN)," Plaintiff does not claim the ALJ committed legal error in connection with his consideration of her report. Doc. 15, at 10. Rather, he only repeats his mother's observations and concludes, "This is a very telling picture from a health care professional and mother whom [sic] has spent more time with [Plaintiff] than any other person in his life." *Id.* at 11.

Contrary to Plaintiff's view that this and other evidence in the case "point[] to the same thing; sustained unemployability," the State agency experts – whose opinions, unchallenged by Plaintiff, were given great weight by the ALJ – found otherwise. *Id.* at 12; AR 24, 275, 277-80. This Court cannot "reweigh the evidence or substitute [its] judgment for the Commissioner's." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

### 5. Obesity.

Plaintiff's opening contention in support of what he terms "[t]he obesity error" – he reported his weight at 400 pounds[11] – is that "[t]he ALJ pays mere lip-service to the obesity error." Doc. 15, at 12. Next, he refers to the ALJ's

---

[11] Plaintiff testified at his January 2012 administrative hearing that he had consistently weighed over 400 pounds "for the last couple of years." AR 38. Likewise, as the ALJ noted, he reported his weight at 400 pounds when he filed his current claims in November 2009, as did his mother in her third-party function report in January 2010. *Id.* at 21, 150, 249. Yet, as the ALJ further observed, when weighed at his physical examination in May 2010, Plaintiff's weight was 239 pounds. *Id.* at 21, 258.

findings that (1) his obesity had not increased the severity of another impairment to the extent the combination of impairments would meet a listing and (2) his obesity did not result in an inability to ambulate. *Id.*; AR 21. He does not take issue with these findings but, instead, argues, "That is not even close to the test on whether obesity is a further erosion to a persons' [sic] RFC." Doc. 15, at 12-13. He then labels the ALJ's statement – presumably, that the ALJ had considered the effects of Plaintiff's obesity in assessing an RFC – as boilerplate, "not an *analysis.*" *Id.* at 13. He claims that "[e]ven the CE noted that [Plaintiff] had generalized pain in his ankles, hips, knees and low back" and argues that "[s]imple deduction should have caused the ALJ to conclude that these problems were related to significant weight, especially in a younger man." *Id.* According to Plaintiff, "[t]he RFC did not include sufficient limitations for [Plaintiff's] obesity and that is error." *Id.*

Nonetheless, Plaintiff – who does not directly challenge the ALJ's RFC assessment – fails to state what "sufficient limitations" the ALJ *should* have included. *Id.* And, Plaintiff ignores that the ALJ, who documented the absence of *any* "medical evidence of record regarding evaluation/treatment of physical complaints except the consultative examination obtained in connection with this case in May 2010," found Plaintiff to be severely impaired by obesity. AR 20, 19. Plaintiff also ignores that the ALJ noted his complaints at the consultative

13

examination of generalized pain in his knees, ankles, hips, and low back associated with immobility secondary to his morbid obesity and the examining physician's assessment of generalized pain in Plaintiff's ankles, hips, knees, and low back. *Id.* at 20, 257-62. Plaintiff similarly ignores that in formulating Plaintiff's RFC assessment, the ALJ relied on the opinion of the State agency physician who specifically considered Plaintiff's obesity in limiting him to work at the light exertional level. *Id.* at 24, 283-84. And, once again, Plaintiff ignores that the ALJ found "some additional postural limitations are appropriate in light of [Plaintiff's] allegations of pain and limitations" and included those limitations in Plaintiff's RFC assessment. *Id.* at 24. Plaintiff has failed to establish error as to the ALJ's obvious consideration of his obesity.

## V. Recommendation and notice of right to object.

For the reasons stated, the undersigned Magistrate Judge recommends the Commissioner's final decision be affirmed.

The parties are advised of their right to object to this Report and Recommendation by June 17, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 28th day of May, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE